# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VIRGINIA SOLIS,

    Plaintiff,

vs.                                             Civil No. 98-1485 LH/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed August 23, 1999 [**docket # 10**]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff, currently age 31, alleges a disability which commenced January 1, 1993, due to back problems.

    2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Ms. Solis can perform light work and that she can return to her past relevant work as a gun assembler and wax molder. The Appeals Council denied Ms. Solis' request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v.

Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. See 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner has the burden of producing evidence regarding the claimant's ability, or residual functional capacity ("RFC") to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

5. The Medical-Vocational Guidelines ("grids") are used at this step to aid the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

6. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ erred in finding that Dr. Deming's opinion supports a finding that Ms. Solis can perform light work, and erred in relying on the opinions of nonexamining doctors regarding Ms. Solis' physical capacity; (2) the ALJ's pain analysis is contrary to law; (3) the ALJ erred in finding the

mental impairment not severe; and (4) the ALJ failed to discuss the vocational expert's testimony that Ms. Solis' mental impairments would have a detrimental effect on her ability to work.

7. At the hearing, Ms. Solis told the ALJ that she can walk for three to four blocks, stand and sit for 15 to 20 minutes before her legs go numb and her lower back hurts. Tr. at 47-48. She said she can lift about 20 pounds. Plaintiff testified that she had crying spells and at times felt "scared." She has never seen a doctor or been treated for depression and said that she cannot afford to do so.

8. Plaintiff described her pain as a "9" on a scale of 1 to 10. Tr. at 51. The pain interferes with her sleep. Tr. at 60. Doctors prescribed Advil, Motrin and Aleve. She said she cannot afford to buy Flexeril or Percocet, which was also recommended. Tr. at 71. She has not seen a doctor since her work-related injury in 1988, but has been hospitalized three times, once in 1993 and twice in 1994, after falls. Tr. at 51-52. Ms. Solis stated that she has headaches frequently, for which she takes over-the-counter medications. Tr. at 56. She reported that she frequently vomits when she has these headaches. Tr. at 190.

9. Plaintiff lives with her husband and cares for her two children, one of whom is about a year old. At the hearing, she told the ALJ that her brother or husband does the housework, and that her husband ties her shoes for her, shaves her legs and helps her put her pants on. Tr. at 54, 62. Plaintiff's husband works in construction, and is gone during the day but is home at night. Plaintiff stated that does not cook and has no hobbies. Tr. at 61.

**First Alleged Error**

10. Plaintiff first alleges that the ALJ erred in finding that Dr. Deming's opinion supports a finding that Ms. Solis can perform light work, and erred in relying on the opinions of

3

nonexamining doctors regarding Ms. Solis' physical capacity. Plaintiff worked in the past as a waitress, gun assembler and wax molder. Based on vocational testimony given, the ALJ found that she could still perform the latter two jobs which constituted light work, as well as other work existing in significant numbers in the national economy.

11. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. Id.

12. Dr. Deming examined Plaintiff and opined that Ms. Solis could stand and/or walk a maximum of 4 hours in an eight-hour day. Tr. at 185. However, Dr. Powell, who did not examine Ms. Solis, but reviewed the medical evidence, opined that Plaintiff could stand and/or walk 6 hours in an eight-hour day. Tr. at 102. Plaintiff objects to the ALJ's conclusion that Plaintiff can perform her past relevant work as a gun assembler and wax molder because Dr. Deming's findings are inconsistent with the requirements for light work.

13. There is no merit to Plaintiff's contention that the ALJ erred by relying on the opinions of nonexamining doctors regarding Ms. Solis' physical capacity. On the contrary, the ALJ's decision was based largely on the examining physician, Dr. Deming. Tr. at 28-29. As to the ALJ's reliance on Dr. Deming's report to determine that Plaintiff can perform light work, there is some theoretical merit to Plaintiff's contention. Here, however, the ALJ had obvious doubts about Ms. Solis' ability to adequately perform in that category of work because he enlisted

4

considerable help from a vocational expert at the hearing.

14. While Dr. Deming's findings that Plaintiff could sit or stand less than the total maximum amount required for the category of light work ordinarily would preclude a finding that Plaintiff could do a "full range" within that category, that bar does not apply to Plaintiff. The ALJ was not required to find that Ms. Solis can perform a "full range" of light work in order to be found nondisabled where the ALJ was considering both exertional and nonexertional impairments and where he was not relying on the grids to make the determination. See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995) (when grids do not control the disposition, a showing that claimant can perform a "significant number of available jobs in one or more occupations is sufficient instead of an ability to perform a "substantial majority" of positions).

15. When both exertional and nonexertional impairments diminish a claimant's residual functional capacity, "the [Commissioner] must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." Cruse v. U.S. Dept. of Health & Hum. Serv., 49 F.3d 614, 619 (10th Cir. 1995).[1] The ALJ did that here. Moreover, Plaintiff's contention that "the ALJ did not discuss the fact that Dr. Deming's RFC assessment is for less than a full range of light work," Reply at 4, is unfounded. The ALJ did not need to "discuss" that fact when the very first hypothetical posed to the ALJ specifically included the functional limitations contained in Dr. Deming's RFC assessment. Tr. at 75. The vocational expert ("VE") had been present listening to all the testimony and had in hand all of the pertinent exhibits referred to by the ALJ, including Dr. Deming's assessment.

---

[1] A claimant's RFC is done at both steps four and step five. Winfrey v. Chater, 92 F.3d 1017, 1023 n.4 (10th Cir. 1996); SSR 96-8p. Here, the ALJ made findings under both steps. Tr. at 32-33.

16. Not only did the ALJ specifically refer to Dr. Deming's report as a basis for one of the hypotheticals, but he then explicitly referred to findings from the report about a page later in the testimony (". . . can stand 4 to 5 hours in a full day. . . .") Tr. at 76. Thus, I find that the functional limitations in Dr. Deming's report were in fact "discussed" with the VE, and that the ALJ's determination that Plaintiff can perform light work was not in error.

**Second Alleged Error**

17. Plaintiff contends that the ALJ's pain analysis is contrary to law, challenging the ALJ's credibility determination. I find that the ALJ applied the proper legal framework to the credibility analysis. He considered relevant factors, such as the effectiveness of medications, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ and the consistency or compatibility of nonmedical testimony with objective medical evidence. See Thompson, 987 F.2d at 1489.

18. However, I find that the evidence cited by the ALJ on the basis of these factors does not constitute substantial evidence. The ALJ stated in the decision that Plaintiff "is able to clean, shop, cook, take public transportation, pay bills, maintain a residence, care appropriately for her grooming and hygiene, use telephones and directories and use a post office." Tr. at 23. Part of this statement was based on Dr. Deming's 1996 report which stated that Plaintiff "takes care of her children, is responsible for her own personal hygiene and changes her clothes without assistance." Tr. at 179.

19. Yet in the same report, Dr. Deming also noted that Plaintiff stated she needed help "putting on her pants, socks and shoes and shaving her legs," Tr. at 177, which is consistent with

6

Plaintiff's testimony at the hearing. The statements on the daily activities questionnaire are also strikingly inconsistent with the ALJ's findings. Tr. at 163-65. Plaintiff also told Dr. Deming that "she gets nauseated with the pain everyday" and "vomits about once a week." Tr. at 178.

20. The ALJ's assessment that Plaintiff's pain is "mild" and "alleviated by medication" is also unsupported by the evidence. Tr. at 32. Dr. Deming noted that sitting in a hot tub or shower "partially relieves the pain" and only for 2 to 3 hours. Tr. at 177-78. Another medical note states that Plaintiff appeared "uncomfortable from her back." Even the ALJ noted during the hearing that she sat on the edge of her chair and upon questioning Plaintiff explained that her position was due to back pain. Tr. at 57. The seemingly apparent inconsistencies in Plaintiff's lifting abilities could as well be attributed to differences in abilities to lift "frequently" as opposed to "occasionally," which Plaintiff's responses suggested. Tr. at 48, 60, 64. Further, the ALJ's heavy reliance on these "activities" to establish an RFC for light work was contrary to law, given the paucity of evidence available under the other factors. Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain).

21. The ALJ was entitled to say Plaintiff "exaggerates" and "prevaricates" her pain. Tr. at 29. While this observation, along with the fact that Ms. Solis did not pursue medical treatment for her pain[2] and the ALJ's other findings support a conclusion that Plaintiff's pain was not

---

[2] Plaintiff stated that she never tried to get financial help for the purchase of prescriptions from family assistance or other community resources. Tr. at 91. While inability to afford treatment is not in itself sufficient for a finding of "failure" to pursue medical treatment, the claimant is generally expected to make attempts to locate other resources that may be available. SSR 82-59.

7

constant or unremitting,[3] and not disabling, it is not sufficient to support a finding of noncredibility. It also does not preclude a finding that pain should have been considered as a nonexertional impairment that may have some impact on her ability to do light work. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain). Thus, the case should be remanded to conduct another credibility inquiry and if necessary, to consider the effect of Plaintiff's back pain on her ability to do light work and its effect in general on her residual functional capacity.

**Third Alleged Error**

22. Plaintiff next contends that the ALJ erred in finding the mental impairment not severe. I find no error in this regard. Plaintiff bases this contention on an "Axis V" diagnosis made by Dr. Balcazar which Plaintiff interprets to mean a "marked impairment in either social relations or occupational functioning, or moderate impairment in both." Mem. at 9. However, the ALJ correctly viewed Dr. Balcazar's report in light of all the evidence, including the actual findings Dr. Balcazar made, before concluding that Plaintiff's mental impairment of depression was not severe.

23. In his report, Dr. Balcazar stated that Plaintiff's mood was "slightly on the depressed side," that she "could have adequate judgement to plan a work sequence" and could use tools to do "simple jobs" at a competitive rate. Although the doctor acknowledged some difficulty in her

---

[3] A finding of "disability requires more than mere inability to work without pain." Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986). "To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown at 362-63.

interaction with coworkers and supervisory personnel, he believed that "her main handicap is of a physical nature. . .". Tr. at 192. Plaintiff was also examined by Dr. Gabaldon, who examined Plaintiff and opined that Ms. Solis' depression was not severe. Tr. at 121-30. Thus, based on all the available evidence, the ALJ did not err in finding that Plaintiff's mental impairment was not severe.

**Fourth Alleged Error**

24. Last, Plaintiff alleges that the ALJ failed to discuss the vocational expert's testimony that Ms. Solis' mental impairments would have a detrimental effect on her ability to work.

25. The hypotheticals posed to the VE included the functional limitations of both Dr. Deming's report and those Plaintiff herself presented. Tr. at 75 & following. Even if there were some question about Plaintiff's ability to do light work, the VE also opined that there were significant numbers of sedentary jobs Plaintiff could do. Tr. at 81.[4]

26. Dr. Balcazar's findings were discussed at the hearing when the VE was questioned. Tr. at 82. The VE had some difficulty translating the "Axis V" diagnosis into vocational findings without further detail and information. Tr. at 84. ("I think I would need more information on that definition in order to answer." The ALJ was correct not to rely on a piece of Dr. Balcazar's findings in a vacuum, but rather to pose hypotheticals which adequately reflected the state of the record, See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993), which was that Plaintiff's mental impairment was not severe and would not have an effect on Plaintiff's ability to work. Therefore, this allegation of error has no merit.

---

[4] The hypotheticals reflected the ALJ's findings at the time, which did not include a nonexertional impairment of pain.

27. In sum, I find that: (1) the ALJ did not err in finding that Dr. Deming's opinion supports a finding that Ms. Solis can perform light work, and did not err in relying on the opinions of nonexamining doctors regarding Ms. Solis' physical capacity; (2) the ALJ's pain analysis was contrary to law and unsupported by substantial evidence; (3) the ALJ did not err in finding the mental impairment not severe; and (4) the ALJ did not fail regarding the VE's discussion of Plaintiff's mental impairment.

**Recommendation**

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing [**docket # 10**] be granted in part in that this cause be remanded to the Commissioner for the purpose of conducting another credibility inquiry as to Plaintiff's complaints of pain, and if necessary, to consider the effect of Plaintiff's back pain on her ability to do light work. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE